NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DIONE M. BROWN,                        :
                                       :   Civil Action No. 10-0291 (DMC)
              Plaintiff,               :
                                       :
       v.                              :   OPINION
                                       :
DARRYL HOOPER, et al.,                 :
                                       :
              Defendants.              :

APPEARANCES:

Plaintiff pro se
Dione M. Brown
340261B/574545
Northern State Prison
168 Frontage Road
Newark, NJ 07114

CAVANAUGH, District Judge

       Plaintiff Dione M. Brown, a prisoner confined at Northern

State Prison, seeks to bring this action in forma pauperis

pursuant to 42 U.S.C. § 1983, alleging violations of his

constitutional rights.  Based on his affidavit of indigence and

the absence of three qualifying dismissals within 28 U.S.C.

§1915(g), the Court will grant Plaintiff's application to proceed

in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the

Clerk of the Court to file the Complaint.

       At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff Dione M. Brown alleges that his due process rights were violated and that his liberty interest was denied by a course of events stemming from alleged denial of access to courts.

He names as defendants Director of Tully House Darryl Hooper, C.E.O./President of Tully House John Clancy, Assistant Superintendent of Central Reception and Assignment Facility Mr. Buschele, Assistant Superintendent of Northern State Prison Eric Stokes, Community Release Coordinator of Northern State Prison Margaret Henderson, Commissioner of New Jersey Department of Corrections George W. Hayman, and Director of Community Programs of New Jersey Department of Corrections Marcus O. Hicks.

Plaintiff alleges that on April 23, 2009, he was released from Northern State Prison into the Fresh Start community release program at the full minimum units of Northern State Prison and then arrived at the residential halfway house Tully House on July 10, 2009.  He alleges that on or about August 17, 2009 he submitted a request to go to the "community law library."  He

2

alleges that individuals Mr. Hooper, Mr. Lutz, and Ms. Craten[1] "had a problem with what [Plaintiff] had requested." He further alleges that "Defendants started making threats of sending [Plaintiff] back to prison if he didn't want to use the nexis program, furthermore, [Plaintiff] believed that the nexis program was not meaningful law to him." The Court construes the term the "nexis program" to mean the computerized LexisNexis legal research system.

Plaintiff states that he attempted to use the program on three separate occasions but was unable to find any "meaningful law pertinent to [Plaintiff's] case." Plaintiff does not specify what type of case and issues that he was attempting to research.

Plaintiff further alleges that on August 25, 2009 he filed a grievance against the director of Tullyhouse Darryl Hooper regarding the alleged denial of access to an adequate law library. Plaintiff alleges that on September 4, 2009 he was transferred from Tullyhouse and on September 24, 2009 he appeared before the New Jersey Department of Corrections Inter-Institutional Classification Committee at the Central Reception and Assignment Facility in Trenton, New Jersey for reclassification. He alleges that he was "arbitrarily removed from community release" and assigned to Northern State Prison. He was transferred to Northern State Prison on October 1, 2009

---

[1]Lutz and Craten are not named defendants in this matter.

3

and on October 7, 2009 he appeared before the Northern State Prison Classification committee.  He alleges that his reclassification was a result of retaliation for filing the access to courts grievance.

Plaintiff seeks injunctive relief[2] as well as compensatory and punitive damages.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

_____

[2]Plaintiff's injunctive relief request includes reinstatement of lost work credits.  Such a request must be brought as a petition for habeas corpus following exhaustion of state remedies.

4

in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

5

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made. Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement. And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ... It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice. Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality. Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not
> merely parallel conduct that could just as well be
> independent action.
>
> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief." A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the <u>Twombly</u> pleading standard applies outside the § 1 antitrust context in which it was decided.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read <u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." <u>Id.</u> at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

9

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516

11

U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an

agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-

capacity action, ... a governmental entity is liable under § 1983

only when the entity itself is a 'moving force' behind the

deprivation; thus, in an official capacity suit the entity's

'policy or custom' must have played a part in the violation of

federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)

(internal quotation marks and citations omitted).

IV.  <u>ANALYSIS</u>

A.  <u>Access to Courts Claim</u>

Plaintiff claims that he was denied access to the courts

because he allegedly was not provided with access to an adequate

law library.

The constitutional right of access to the courts is an

aspect of the First Amendment right to petition the government

for redress of grievances.  <u>Bill Johnson's Restaurants, Inc. v.</u>

<u>NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional

guarantee of due process of law has as a corollary the

requirement that prisoners be afforded access to the courts in

order to challenge unlawful convictions and to seek redress for

violations of their constitutional rights.  <u>Procunier v.</u>

<u>Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>,

<u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u>

<u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)

13

(chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ...  [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a

14

complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial."  Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or

15

imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3
(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff claims due process rights violations
stemming from denial of access to a law library but has not
alleged the "actual injury" required to sustain such a claim.
Plaintiff does not have an abstract right to access to a law
library and has failed to allege any facts indicating that his
lack of access to a law library has caused him actual injury with
respect to any of the narrow class of claims protected by the
constitutional right of access to courts.  Accordingly, since
Plaintiff has not alleged that he was thwarted in pursuing a non-
frivolous case, he has failed to state a claim for a
constitutional violation based upon denial of access to the
courts.

B.   Place of Confinement Claim

Plaintiff alleges that his due process liberty interest
rights were violated because he was transferred out of the
residential halfway house.

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);
Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.
1999).

16

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

17

its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). <u>See also</u> <u>Asquith</u>, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. <u>Id.</u>

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. <u>See</u>, <u>e.g.</u>, <u>Olim v</u>

Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Here, Plaintiff has failed to allege any facts suggesting that being transferred from the halfway house amounted to "atypical and significant hardship." Accordingly, Plaintiff has failed to state a claim for a constitutional violation based upon his classification.

C.    Retaliation claim

Plaintiff alleges that his transfer out of the halfway house was in retaliation for filing the grievance regarding access to a law library.

Retaliation claims survive Sandin, even when the retaliatory action does not involve a liberty interest. Allah v. Seiverling, 229 F.3d 220, 223-24 (3d Cir. 2000). To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd.

19

of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

The facts alleged here are not sufficient to show that Plaintiff has a plausible claim for relief for retaliation. All that Plaintiff has alleged is a temporal connection between his grievance and then his subsequent transfer. In light of the context in which Plaintiff makes his claim and given the set of facts alleged, it is not plausible that the grievance was "a substantial or motivating factor" in the decision to transfer him out of the halfway house. Cf. Gans v. Rozum, No. 06-62J, 2007 WL 257127, *6 (W.D. Pa. Aug. 31, 2007) (mere temporal connection between filing of civil rights complaint and exercise restriction is "too thin a reed" on which to hang a retaliation claim), aff'd, 267 Fed.Appx. 178 (3d Cir.) (unpubl.), cert. denied, 129 S.Ct. 84 (2008); Lopez v. Beard, No. 08-3699, 2009 WL 1705674 (3d Cir. June 18, 2009) (allegation of that denial of visitation on two occasions was in retaliation for filing grievances is frivolous).

V.   CONCLUSION

The Complaint shall be dismissed without prejudice for failure to state a claim.[3] Because it is conceivable that

---

[3] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the

Plaintiff could file an amended complaint sufficient to overcome certain deficiencies noted herein, he will be granted leave to move to reopen.  Any such motion must be accompanied by a proposed amended complaint.[4]

An appropriate order follows.

_____
Dennis M. Cavanaugh
United States District Judge

Dated: 8/10/10

---

plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case."  Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open in accordance with the court rules.

[4] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.